UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-21301-CIV-MORENO**

ACP PEACHTREE CENTER, LLC,

        Plaintiff,

vs.

GREAT NORTHERN INSURANCE CO.,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court on the Defendant's Motion for Summary Judgment, **(D.E. 24)**, which was filed on September 4, 2020. The Court has carefully considered the motion, the response and reply thereto, the pertinent portions of the record, and the oral argument made by counsel at the October 27, 2020 hearing in this matter.

This is a declaratory judgment action where the Plaintiff insured seeks a declaration that, pursuant to the Policy, the Defendant insurer is required to indemnify the Plaintiff for a covered loss under the Policy. The Plaintiff also seeks a declaration that the Defendant did not suffer prejudice as a result of any alleged late notice by the Plaintiff regarding the underlying claim that is the subject of the loss. The Defendant counters that it is not required to indemnify the Plaintiff for the loss in the underlying state court action where the Plaintiff is a defendant because the Plaintiff failed to timely provide the Defendant with notice of the claim, and it was prejudiced as a result. The Defendant now moves for summary judgment.

Under Florida's choice of law principles, Florida law governs the rights and liabilities of the parties in determining this issue of insurance coverage, that is, whether the Defendant has a

valid coverage defense in this matter. As Florida law applies to this action, the Defendant insurer was required to comply with the Florida Claims Administration Statute, § 627.426, Fla. Stat. Specifically, the Defendant failed to comply with § 627.426(2)(b) because it did not provide written notice to the Plaintiff within 60 days of compliance with § 627.426(2)(a) that it was refusing to defend the Plaintiff in the underlying lawsuit. As a result, the Defendant is estopped from raising this defense to coverage and the Defendant's motion for summary judgment is denied.

## I.     BACKGROUND

### A.  The underlying *"Ruede"* action in Georgia state court

In the underlying personal injury action in Georgia state court, the injured party slipped and fell at the Metro Diner Café at the Peachtree Center in Atlanta, Georgia. On December 20, 2018, the injured party, Lisa Ruede, sued the Plaintiff insured in this action, ACP Peachtree Center, LLC, and Spring Street Restaurant Group, LLC, who allegedly maintained the premises. After a hearing in the Georgia state action, on April 17, 2019, the trial court entered Final Judgment against the defendants in that action and in favor of Ms. Ruede because the Plaintiff did not timely respond to Ms. Ruede's complaint.

On April 24, 2019, the Plaintiff forwarded the default judgment to its insurance broker, which forwarded the default judgment to the Defendant, Great Northern Insurance Company. On May 1, 2019, the Defendant's claim representative, Richard Barreto, sent an email to the Plaintiff acknowledging receipt of notice of the default judgment, stating, in part: "Once we have obtained the complaint and can confirm the date of loss, we can then determine if Chubb's ability to defend this matter has been prejudiced and address coverage accordingly."

Later, on May 6, 2019, the Defendant sent another email to the Plaintiff, this time advising, in relevant part: "We are currently undertaking a review of coverage relative to this matter. As

Chubb was not made aware of this matter until well after the entry of default, we may have been prejudiced in our ability to defend you in this matter." On the same day, the Plaintiff moved to set aside the default judgment and moved for a new trial in the *Ruede* action.

On June 26, 2019, the Defendant sent a letter to the Plaintiff, stating that "it appears that suit was initially filed 12/20/2018 and served against you 02/06/2019" and that "[a] default entry was made 04/17/2019," which occurred prior to the Defendant's notice of the claim. In the letter, the Defendant stated that it has "identified coverage issues which may limit or preclude coverage for the claim under the above cited policy" and that it "reserves all rights to proceed to complete an evaluation of coverage in order to provide you with our formal position in response to this claim."

Subsequently, on October 8, 2019, the trial court granted the motion to set aside the default and ultimately presided over a bench trial on the apportionment of fault and damages. In the order, the trial court stated that the Plaintiff "remain[ed] in default as to liability." The trial court ultimately presided over a two-day bench trial on the apportionment of fault and damages on December 4-5, 2019. After the bench trial, the trial court entered an Amended Final Judgment, apportioning 85% fault to the Plaintiff, 15% to Spring Street, and 0% to Ms. Ruede, and awarded $1,171,441.50 in damages against the defendants there. The Defendant here did not participate in those proceedings.

## B. The Policy

The Defendant issued the Policy in this case to Banyan Street Risk Management, a Florida entity. Banyan Street negotiated the Policy in Florida, through its Florida-based insurance broker, and the Defendant delivered the Policy in Miami, Florida. Banyan Street is the first named insured in the Policy, and the Plaintiff is listed as an "additional insured." The Policy contains Florida-

specific terms and covers several Florida properties in addition to the Peachtree Center. The Defendant also adjusted and evaluated the *Ruede* claim from its Tampa, Florida office.

As relevant here, the Policy contains a "Duties In the Event Of Occurrence, Offense, Claim or Suit," which reads, in relevant part:

B. If a claim is made or **suit** is brought against any **insured**, you must:

1. immediately record the specifics of the claim or **suit** and the date received;

2. notify us and other insurers as soon as practicable; and

3. see to it that we receive written notice of the claim or **suit** as soon as practicable.

C. You and any other involved **insured** must:

1. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

2. authorize us to obtain records and other information;

3. cooperate with us and other insurers in the:

   a. investigation or settlement of the claim; or

   b. defense against the **suit**…

(D.E. 24-6, at 36) (emphasis in original). Moreover, the Policy contains a "Legal Action Against Us" provision, which reads, "[n]o person or organization has a right under this insurance to:…sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with." *Id.* at 37.

The parties agree that the Policy is silent as to the governing law.

**C.  The Instant Proceedings**

In these proceedings, the Plaintiff seeks a declaration that Defendant is required to indemnify the Plaintiff for the loss in the underlying *Ruede* action pursuant to the Policy. The Defendant now moves for summary judgment, claiming that the Plaintiff failed to comply with the Policy's notice provision, and the Defendant was prejudiced as a result. Hence, the Defendant

argues that it is not required to indemnify the Plaintiff under the Policy. The Defendant claims that Georgia law should apply to the Court's interpretation of the Policy because any performance under the contract, e.g., any indemnification, would occur in Georgia. According to the Defendant, under Georgia law, "an unexcused and unreasonable delay in notice generally relieves the insurer from its obligation under an insurance policy." Moreover, even if Florida law applied, the Defendant maintains that the Plaintiff has failed to rebut the presumption that it was prejudiced. Under Florida law, prejudice is presumed when there is untimely notice pursuant to a policy. In its response in opposition, the Plaintiff claims that Florida law applies to this action, the Defendant is estopped from raising its late notice coverage defense because of its failure to comply with the Florida Claims Administration Statute, and, even if the Defendant complied with the statute, the Plaintiff has rebutted the presumption of prejudice.

## II.   LEGAL STANDARD

Summary judgment is authorized where there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. A jury must be able reasonably to find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### III.   ANALYSIS

First, in its motion for summary judgment, the Defendant argues that, under Florida's choice of law principles, Georgia law should be applied to this coverage dispute. Second, even if Florida law applied, the Defendant maintains that the Plaintiff has not rebutted the presumption of prejudice, which is presumed as the Plaintiff provided late notice to the Defendant regarding the underlying *Ruede* claim. In its response, the Plaintiff contends that Florida law applies to this action, and the Court should deny the Defendant's motion for summary judgment because the Defendant failed to comply with the Florida Claims Administration Statute. For the reasons that follow, the Court agrees with the Plaintiff and denies the Defendant's motion for summary judgment.

#### A.   Choice of Law

As a preliminary matter, in its motion for summary judgment, the Defendant acknowledges that "[t]he default choice of law rule in Florida for interpretation of contracts is *lex loci contractus*[,]" that is, "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." In *Roach*, the Florida Supreme Court noted that "[i]n determining which state's law applies to contracts, we have long adhered to the rule of lex loci contractus" and "[t]hat rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). Thus, as noted by the Defendant, "[b]ecause the Policy was issued to the first named insured, Banyan Street, at its offices in Miami, Florida, through its broker, Willis of Florida, Inc. in Tampa, Florida, the *lex loci contractus* rule would appear to call for applying Florida law in this action."

Nevertheless, the Defendant maintains that "[u]nder Florida choice-of-law principles, issues of performance of contract, as distinguished from issues of formation or interpretation of the contract, are governed by the law of the place of performance." In support of this proposition, the Defendant cites to *Government Employees Ins. Co. v. Grounds*, 332 So. 2d 13, 14-15 (Fla. 1976), where the Florida Supreme Court held that "matters concerning performance [of a contract] are determined by the law of the place of performance under traditional conflict of law principles." As a result, the Defendant "submits Georgia's late notice rule should apply here, given that the issue here is whether [the Defendant] is obligated to perform under its policy with respect to a suit in Georgia, by a Georgia resident, asserting a premises liability claim arising out of [the Plaintiff's] real property in Georgia."

On the other hand, the Plaintiff contends that *Grounds* is distinguishable as that case involved a bad-faith failure to settle claim, and, in such cases, "the place of performance determines the law for such actions." In support, the Plaintiff cites *Clifford*, where the district court found that "[t]he substantive law of Florida control[led] the bad faith issue in th[at] case." *Clifford v. Commerce Ins. Co.* No. 09-21198, 2009 WL 3387737, at *2 (S.D. Fla. Oct. 16, 2009). There, the district court noted how the rule of lex loci contractus applies when "determin[ing] the rights and risks of parties to an automobile insurance policy 'on the issue of coverage.'" *Id.* at *1 (citing *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295-96 (Fla. 1988)). When dealing with choice of law issues, the district court in *Clifford* reasoned that other "[d]istrict courts in Florida have relied on *Grounds* in holding that Florida law controls *bad faith* insurance issues in cases where the underlying personal injury or wrongful death lawsuit was brought and defended in Florida and where settlement negotiations took place in Florida, regardless of where the insurance contract was executed." *Id.* (emphasis added) (internal citations omitted).

7

To be sure, it appears that the parties agree that this Court should apply Florida's choice of law principles when determining the substantive law that should apply in this case. The Defendant argues that the Court should apply Georgia law, in accordance with *Grounds*, as the Defendant's performance of the contract, e.g., defense and any indemnification, would have occurred in Georgia. Conversely, the Plaintiff claims that *Roach* and the rule of lex loci contractus controls here, and Florida law should be applied as the Policy was executed in Florida, and "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." 945 So. 2d at 1163.

As previously discussed at the October 27 hearing on the Defendant's motion, the Court finds that *H.S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 334 So. 2d 573 (Fla. 1976) supports the application of Florida law to this case. There, an insured stockbroker obtained a liability policy in New York that was "designed to cover claims throughout the United States and Canada" and included a provision that required the insured to "give notice to [the insurer] as soon as practicable of any act or circumstance indicating a claim under the policy." *Id.* at 574. "The policy did not contain a choice of law provision[,]" "[t]he policy of insurance was applied for in New York, countersigned in New York, and premiums were paid in New York," and "[t]he policy was kept by [the insured] in New York and when it gave notice of the claim to [the insurer], the notice was given in New York." *Id.* Subsequently, one of the insured's customers sued in Florida and obtained a judgment against the insured. *Id.* The insurer "refused to honor the claim on the grounds of late notice" because the insured did not provide notice until after the judgment was entered. *Id.* In the subsequent federal action filed by the insured, the insurer moved for summary judgment, claiming that "Florida's conflicts or choice of law rule required the application of New York law to the notice provision in the insurance contract." *Id.* In its opposition, the insured argued that Florida

law should apply to the notice provision. *H.S. Equities, Inc.*, 334 So. 2d at 574. The district court ultimately applied New York law to the notice provision under Florida's choice of law principles and found that the insured's failure to provide notice was "fatal" to the insured's case. In that case, "[u]nder New York law, late notice or lack of timely notice is an absolute defense regardless of whether the insurer is prejudiced thereby." *Id.*

On appeal, the former Fifth Circuit certified the following question to the Florida Supreme Court: "[w]hether Florida or New York law applie[d] to the issue of the effect of late notice given under the insurance policy sued upon." *Id.* at 575. The Florida Supreme Court answered the certified question as follows: "New York law is applicable to the late notice issue as it affects an insurance policy which was entered into between two non-Florida corporations, applied for in New York, paid for in New York, countersigned in New York, retained in New York, and whose performance (payments of indemnity by [the insurer]) was to have occurred in New York." *Id.*

Applying *H.S. Equities* to this case, notwithstanding that any performance by way of indemnity would occur in Georgia, the other facts here militate in favor of applying Florida law to this coverage dispute. The following facts are undisputed: The Defendant issued the Policy in this case to Banyan Street, a Florida entity, which negotiated the Policy in Florida, through its Florida-based insurance broker, and the Defendant delivered the Policy in Miami, Florida. The Plaintiff is listed as an "additional insured" on the Policy. Additionally, the Policy contains Florida-specific terms and covers several Florida properties beyond the Peachtree Center.

Also of note, the Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Miami, Florida, and the Defendant is an insurance company organized and existing under the laws of the State of Indiana with its principal place of business in New Jersey and it is licensed to do business in the State of

Florida. Thus, even though the parties are two non-Florida corporations, both have ties with the State of Florida.

The other cases cited by the Defendant are not particularly instructive on this issue. In *Nova Cas. Co. v. OneBeacon America Ins. Co.*, 603 Fed. Appx. 898, 900 (11th Cir. 2015), the court, relying on *Grounds*, 332 So. 2d at 14-15, held that Florida law governed the remedies available to the excess insurer when the primary insurer refused to defend and indemnify an additional insured. There, the *Nova* court held that "the district court properly applied New York law to all contract interpretation issues, finding, [], that [the primary insurer] owed [the additional insured] a duty to defend and indemnify it and also that, by failing to act, [the primary insurer] breached the duty it owed to [the additional insured]." *Nova Cas. Co.*, 603 Fed. Appx. at 900. When determining that Florida law governed the remedies in that action, the *Nova* court held that the "factors relating to the performance of the contract, including the location of the property, the tort, and the jurisdiction in which the [underlying] suit was brought and not defended, [were] all grounded in Florida." *Id.*

The Court finds that *Nova Cas. Co.* is distinguishable as it did not address whether, under Florida's choice of law principles, a district court must apply the law of the state where the contract was made or the law of the place of performance when a policy is silent as to the governing law and the issue involves an insured's lack of notice to the insurer of a claim, as required by the policy.

The other case cited by the Defendant in support of applying Georgia law is also distinguishable because it involved a district court in Georgia applying Georgia's choice of law principles, not Florida's. *See Nationwide Prop. & Cas. Ins. v. Renaissance Bliss*, 396 F.Supp.3d 1287, 1294 (N.D. Ga. 2019). In that case, the district court noted that, under Georgia law, "where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply." *Id.* (citing *Amstell, Inc. v. Bunge Corp.*, 213

10

Ga.App. 115, 443 S.E.3d 706, 707 (1994)). Thus, it appears that *Amstell's* equivalent under Florida

law is *Grounds*.[1] While the district court was "inclined to agree with [p]laintiffs [because the

contract was intended to be performed only in Georgia as the only property insured is in Georgia],"

"[e]ven if this were not true, Georgia law would apply because Georgia's *lex loci contractus* rule

is subject to another limitation: 'the application of another jurisdiction's law is limited to statutes

and decisions construing those statutes. When no statute is involved, Georgia courts apply the

common law as developed in Georgia rather than foreign case law.'" *Renaissance Bliss*, 396

F.Supp.3d at 1294 (citing *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir.

1983) (citation omitted in original) (applying Georgia law)); *Coon v. Med. Ctr., Inc.*, 300 Ga. 722,

797 S.E.2d 828, 834 (2017). Hence, based on this limitation under Georgia law, and the fact that

the defendants did not cite "any California statute that applie[d]" and only sought "to apply

California's notice-prejudice rule and its limitations on an insurer's implied right to reimbursement

of defense or settlements costs [under the common law]," the district court concluded that Georgia

law applied. *Id.*

The Court agrees with the Plaintiff that *Renaissance Bliss* is distinguishable from this case

because "Florida has no such rule." Additionally, in contrast to *Renaissance Bliss,* where the

district court noted that the only property insured was in Georgia, here, the Plaintiff points out, and

the Defendant does not dispute, that the Policy "covers several Florida properties beyond the

Peachtree Center [in Georgia]."

---

[1] Georgia also follows the traditional doctrine of lex loci contractus. *Nationwide Prop. & Cas. Ins. v. Renaissance Bliss*, 396 F.Supp.3d 1287, 1294 (N.D. Ga. 2019) ("An insurance policy is a contract, and for a choice-of-law determination for contract interpretation, Georgia follows the traditional doctrine of lex loci contractus.") (citing *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1988) (citing *Gen. Tel. Co. of the Se. v. Trimm*, 252 Ga. 95, 311 S.E.2d 460, 461 (1984))).

Thus, the Court finds that *H.S. Equities* controls here. While the Florida Supreme Court in *H.S. Equities* held that New York law (not Florida law) applied there because the parties to the policy were non-Florida corporations and any indemnity was to occur in New York, it also noted that the policy was "applied for in New York, paid for in New York, countersigned in New York, [and] retained in New York." 334 So. 2d at 575. Similarly, here, the Policy was negotiated and delivered in Florida. The Defendant also adjusted and evaluated the *Ruede* claim from its Tampa, Florida office. Moreover, while the parties to the Policy are "non-Florida corporations," the Plaintiff has its principal place of business in Miami, Florida, and the Defendant is licensed to do business in Florida.

Furthermore, as the Florida Supreme Court reiterated in *Roach*, "'lex loci contractus is an inflexible rule,' but concluded that 'this inflexibility is necessary to ensure stability in contract arrangements.'" 945 So. 2d at 1164 (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988) ("When parties come to terms in an agreement, they do so with the implied acknowledgement that the laws of that jurisdiction will control absent some provision to the contrary.")). In *Roach*, the Florida Supreme Court "explained the purpose behind the rule as follows": "In the case of an insurance contract, the parties enter into that contract with the acknowledgement that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement." *Id.* (citing *Sturiano*, 523 So. 2d at 1130). Here, it is undisputed that the Policy contains Florida-specific terms and covers several Florida properties beyond the Peachtree Center in Georgia. Hence, in applying the rule of lexi loci contractus in this case, the Court finds that the "Florida specific terms" within the Policy and their application to "several Florida properties" also support the application of Florida law to the rights and liabilities of the parties in this coverage dispute.

Accordingly, as the rule of lex loci contractus applies regarding "the rights and liabilities of the parties in determining [this] issue of insurance coverage," *see Roach*, 945 So. 2d at 1163, the Court finds that Florida law, the law of the jurisdiction where the contract was executed, governs this action.

### B. The Florida Claims Administration Statute

Notwithstanding that it appears Florida law applies to this coverage dispute, the Defendant still claims that it is "entitled to summary judgment, because there are no facts where by [the Plaintiff] can rebut the presumption of prejudice." "Under Florida law late notice is not a defense if the insured can establish that the insurer was not prejudiced thereby." *H.S. Equities, Inc.,* 334 So. 2d at 575. However, "[i]n Florida, if an insurer fails to comply with [§ 627.426] of [the Florida Claims Administration Statute], it is estopped from denying coverage based on any coverage defenses within the meaning of the statute." *Mid-Continent Cas. Co. v. Basdeo*, 742 F.Supp.2d 1293, 1331 (S.D. Fla. 2010) (internal citations omitted), *aff'd*, 477 Fed Appx. 702, 705-706 (11th Cir. 2012). "Failure to comply with *both* requirements results in the waiver of the coverage defense." *Basdeo*, 477 Fed. Appx. at 706 (emphasis in original).

Here, the Plaintiff contends that the Defendant failed to comply with sections 627.426(2)(a) and (b), and, therefore, the Defendant has waived its late notice defense. The Florida Claims Administration Statute provides, in relevant part:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by United States postal proof of mailing, registered or certified mail, or other mailing using the Intelligent Mail barcode or other similar tracking method used or approved by the United States Postal Service sent to the last known address of the insured or by hand delivery; and

13

(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

1. Gives written notice to the named insured by United States postal proof of mailing, registered or certified mail, or other mailing using the Intelligent Mail barcode or other similar tracking method used or approved by the United States Postal Service of its refusal to defend the insured;

2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or

3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

§ 627.426(2), Fla Stat.

**1.   § 627.426(2)(a)**

As previously noted, under § 627.426(2)(a), "[a] liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless: (a) [w]ithin 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by United States postal proof of mailing, registered or certified mail, or other mailing using the Intelligent Mail barcode or other similar tracking method used or approved by the United States Postal Service sent to the last known address of the insured or by hand delivery."

In its response in opposition, the Plaintiff argues that the Defendant cannot avail itself of its coverage defense in this case because it failed to comply with § 627.426(2)(a), as "[t]he records show that, at the latest, [the Defendant] knew or should have known of its defense by May 6, 2019" but the Defendant "did not issue its reservation of rights letter until June 26, 2019, thus failing to meet subsection (a)'s deadline." These facts are undisputed. Accordingly, based on a plain reading

of the statutory provision, it appears that the Defendant failed to comply with § 627.426(2)(a) because it did not send written notice of reservation of rights within 30 days after the Defendant knew or should have known of the coverage defense, as required by the statute.

In its reply, the Defendant does not appear to contest that it did not fully comply with the statute, rather, it maintains "there is no statutory waiver because [it] promptly provided actual notice of its prejudice defense" via the May 6, 2019 email that was sent by the Defendant's adjuster, Mr. Barreto, to the Plaintiff. The email reads, in relevant part: "We are currently undertaking a review of coverage relative to this matter. As Chubb was not made aware of this matter until well after the entry of default, we may have been prejudiced in our ability to defend you in this matter." Because "Florida courts recognize the doctrine of substantial compliance with respect to the [Florida Claims Administration Statute] and have held that technical compliance with the statute in every respect is not required, so long as the insured is on actual notice of a potential coverage defense," the Defendant maintains that it has substantially complied with § 627.426(2)(a) and may proceed with its coverage defense. *See Pepper's Steel & Alloys, Inc. v. U.S. Fid. & Guar. Co.*, 668 F. Supp. 1541, 1544 (S.D. Fla. 1987) (finding that strict compliance with Florida Claims Administration Statute was not required where the insureds "concede[d] actual notice within the meaning of the statute")[2]; *Phoenix Ins. Co. v. McCormick*, 542 So. 2d 1030, 1031-32 (Fla. 2d DCA 1989) (agreeing with the reasoning of *Pepper's Steel* and holding that "a literal interpretation of statutory language, however, is not required when it would lead to an

---

[2] In relevant part, the *Pepper's Steel* court found: "Without defining the outer parameters of the statute, and while recognizing that at least one court addressing the statute has strictly construed it, [], this Court holds that, on the facts of this case, where Plaintiffs concede actual notice within the meaning of the statute although not in strict compliance with it, it has been complied with. Insofar as the Plaintiffs were on actual notice, this Court feels comfortable that its decision comports with due process and that the legislative intent embodied in the notice requirements of the statute has been effectuated." 668 F. Supp. at 1544.

unreasonable or ridiculous conclusion and there are cogent reasons for believing that the letter of the law does not accurately disclose legislative intent.") (internal citations omitted); *cf. Country Manors v. Master Antenna Systems*, 534 So. 2d 1187, 1194 (Fla. 4th DCA 1988) (holding that insurer was "precluded from denying coverage based on a 'coverage defense'" and affirming trial court's ruling that § 627.426(2) requires strict compliance).

While Florida appellate courts appear to be split on whether § 627.426(2)(a) requires strict compliance, when holding that a similar statute's "mode of service" did not require strict compliance, the Florida Supreme Court cited with approval the Second District Court of Appeal's reasoning in *Phoenix Ins. Co. v. McCormick*, noting how "[w]hen considering other statutes that appear to mandate a specific mode of service, several Florida courts have held actual notice by a mode other than that prescribed sufficient." *Patry v. Capps*, 633 So. 2d 9, 12 (Fla. 1994) (citing *Phoenix Ins. Co.*, 542 So. 2d at 1032). In *Patry*, the Florida Supreme Court recharacterized the certified question from the Second District Court of Appeal as "whether the acknowledged receipt of timely written notice of intent to initiate litigation for medical malpractice that results in no prejudice to the defendant is sufficient notice under [former] section 768.57(2), Florida Statutes…" 633 So. 2d at 10. There, "[i]t [was] undisputed that [the defendant] was served with the [plaintiffs'] intent to initiate litigation by hand delivery rather than by certified mail, return receipt requested, as provided in the statute." *Id.* at 10-11. Relying on the reasoning in *McCormick*, the Florida Supreme Court did not require strict compliance with the mode of service provided for in that statute, reasoning that it did not believe that "the Legislature intended such an irrational result," that is, "the statute of limitations would not be tolled when service was by a mode other than provided in the statute, even if the defendant concedes receipt of timely written notice that caused no prejudice." *Id.* at 12-13.

In this case, via email, the Defendant advised the Plaintiff that it "was currently undertaking a review of coverage relative to this matter" and "[a]s Chubb was not made aware of this matter until well after the entry of default, [it] may have been prejudiced in [its] ability to defend you in this matter." Plaintiff claims that this is not sufficient notice because the "lone sentence fails to cite any provision in the Policy, fails to note that coverage may be denied, and fails to even use the word 'notice.'" The Plaintiff also adds that "[i]t is not analogous to a formal reservation of rights letter." Yet, the Plaintiff cites no legal authority for the proposition that the language in the letter is not sufficient to put the Plaintiff on notice of a coverage defense based on the Plaintiff's failure to make the Defendant "aware of this matter" in a timely fashion. Accordingly, because the Defendant substantially complied with § 627.426(2)(a), the Court finds that the Defendant is not estopped from asserting this coverage defense on this basis. *See McCormick*, 542 So. 2d at 1031.

### 2.   § 627.426(2)(b)

Having found that the Defendant substantially complied with § 627.426(2)(a) of the Florida Claims Administration Statute, the Court must next determine whether the Defendant complied with § 627.426(2)(b). Section 627.426(2)(b) reads, in relevant part:

> (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
>
> > 1. Gives written notice to the named insured by United States postal proof of mailing, registered or certified mail, or other mailing using the Intelligent Mail barcode or other similar tracking method used or approved by the United States Postal Service of its refusal to defend the insured;

§ 627.426(2)(b).

The Defendant maintains that it complied with § 627.426(2) because "as of June 26, 2019, it is undisputed that [the Plaintiff] had written notice of [the Defendant's] position that the default relieved it of any defense obligation until such time as the default was set aside." This argument

17

misses the mark. Section 627.426(2)(b) requires the insurer to "give[] notice to the named insured…of its refusal to defend the insured." In the June 26, 2019 letter, the Defendant stated that it "has identified coverage issues which may limit or preclude coverage for the claim under the above cited policy" and that it "reserves all rights to proceed to complete an evaluation of coverage in order to provide you with our formal position in response to this claim." (D.E. 29-6, at 3). Nowhere in the letter did the Defendant state its refusal to defend the Plaintiff insured. Rather, the letter is riddled with statements to the contrary, such as the Defendant stating that it "reserves all rights to proceed to complete an evaluation of coverage *in order to provide you with our formal position in response to this claim*." (D.E. 29-6, at 3) (emphasis added).

"Consequently, the Court concludes that [the Defendant] failed to comply with the [Florida Claims Administration Statute] and is, thus, barred from asserting a coverage defense." *See Shopping Center Management,* No. 09-21426-CIV, 2010 WL 1302967, at *6 (S.D. Fla. Mar. 31, 2010) (citing *Country Manors Ass'n*, 534 So. 2d at 1194). As a result, the Defendant "is precluded from denying coverage based on any coverage defense" as it did not provide written notice of its refusal to defend within 60 days of its compliance with § 627.426(2)(a), which occurred on May 6, 2019. *Id.* (internal quotations omitted)*; see also Basdeo*, 477 Fed. Appx. at 706 (holding that, even if the insurer complied with § 627.426(2)(a), the insurer was estopped from denying coverage because it "failed to comply with the second requirement of the [Florida Claims Administration Statute] because it did not give written notice of its refusal to defend [the insured] within sixty days of [] the date it received the [] complaint naming [the insured] as a defendant"). Because the Defendant is estopped from raising a coverage defense, the Court need not address whether the Plaintiff has rebutted the presumption of prejudice under Florida law.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, it is

**ADJUDGED** that

1.  The Defendant's Motion for Summary Judgment (D.E. 24) is **DENIED**.

2.  The parties shall each file a notice indicating the procedural posture of this matter given the Court's finding that the Defendant failed to comply with the Florida Claims Administration Statute and is estopped from raising its coverage defense. The notice shall not exceed five (5) pages and be filed **by November 25, 2020**.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th of November 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record